IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ARTHUR McELROY, | ) | CASE NO. 4:06CV3178 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| | ) | |
| BANC OF AMERICA INVESTMENT SERVICES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on two motions: 1) the Motion to Dismiss or in the Alternative to Compel Arbitration (Filing No. 12) filed by Defendant Banc of America Investment Services (hereafter referred to as "BAI"); and 2) the Motion to Deny Defendant's Motion to Dismiss or in the Alternative to Compel Arbitration (Filing No. 16) filed by Plaintiff Arthur McElroy.

BAI contends that this Court lacks subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 because the amount in controversy is less than $75,000. McElroy alleges that BAI improperly converted funds in his brokerage accounts. Specifically, McElroy alleges that: 1) "Defendant knowingly and intentionally converted the compound time value of $104,514 over the course of more than one and one half years, from October, 2004 to the present. At a simple 20 % rate of return, for 18 months, the converted amount would be $31,354.20; the compound amount converted would be approximately $40,000; " and 2) that the Defendants intentionally converted $62,408.54 as of June 30, 2006; and 3) McElroy prays for compensatory damages in the amount of $102,354.20. (Filing No. 1, ¶¶ 3, 5, and prayer for relief).    BAI contends that the Court lacks subject matter jurisdiction because Plaintiff apparently is complaining about margin

calls made by it as authorized by federal law. BAI explains that McElroy is complaining about activity in his non-discretionary brokerage accounts at BAI, and specifically about the manner in which BAI handled margin calls and margin deficiencies in his accounts. BAI provided some background in its brief:

> [A] certain level of equity is required in a margin account, like Plaintiff's Accounts. The amount that a brokerage customer is allowed to borrow on margin (the "margin balance") is limited by federal law, and is based on a percentage of the value of the securities held in the account. See generally, Federal Reserve Board, Credit by Brokers and Dealers (Regulation T), 12 C.F.R § 220 et seq.; National Association of Securities Dealers, Inc. ("NASD") Rule 2520. The Federal Reserve Board sets the minimum maintenance requirement.
>
> If, due to a decline in portfolio value, the margin balance in an account goes beyond the allowable "margin," the broker is required to make a "margin call" to the customer to make up the margin deficiency. The customer can satisfy the "margin call" by either directing the broker to liquidate securities in the account, or by depositing additional funds or securities. See 12 C.F.R. §§ 220.2, 220.4 and 220.12; NASD Rule 2520. If a customer receives a margin call and does not deposit additional cash or securities in the account to cover it, the broker has the absolute right to sell securities to increase the account's equity until it is above the maintenance margin. See 12 C.F.R. §§ 220.4(c).

(Filing No. 13 at 1-2). With regard to the substantive allegations, BAI contends that it made proper margin calls on McElroy's accounts and properly liquidated positions to satisfy those calls when McElroy failed to do so. BAI contends that McElroy confuses properly made margin calls with conversion of property.

With regard to the jurisdictional amount in controversy, BAI argues that the claimed damages are based on the "time value" of some unspecified funds that McElroy alleges would have earned a rate of return of 20 percent. Because these allegations are simply conclusions and are not supported by factual allegations, BAI contends that the Court should dismiss the case for lack of subject matter jurisdiction.

When the Court's subject matter jurisdiction has been challenged, "[t]he party invoking federal jurisdiction must prove the requisite amount by a preponderance of the evidence." *Rasmussen v. State Farm Mut. Auto. Ins. Co.,* 410 F.3d 1029, 1031 (8th Cir. 2005). In response to the Defendant's motion, McElroy only realleges the allegations contained in his Complaint, including that the "amount in controversy is slightly more than $102,000 which is more than $75,000." (Filing No. 16, at ¶ 4, see also ¶ 6). McElroy provided no facts to support the allegations of loss; he did not identify specific transactions, dates, or losses, and he did not submit any statements to demonstrate the amount of decline in his accounts over the relevant time. Because the Court finds that McElroy has not provided any facts to establish the amount in controversy, and therefore has failed to prove the amount in controversy by a preponderance of the evidence, the Court will grant the Defendant's motion to dismiss for lack of subject matter jurisdiction.

In the event that the jurisdictional issue could be viewed differently by another court, and because the Plaintiff is proceeding pro se, the Court will briefly address the arbitration argument. BAI moves in the alterative for an order compelling arbitration, contending that McElroy signed a written agreement to arbitrate all disputes of the kind presented in this case. McElroy denied signing an arbitration agreement. The Court granted the Defendant thirty (30) days from April 25, 2007, to file a copy of the agreement to arbitrate, and the Defendant has complied. On May 23, 2007, the Defendant filed the Affidavit of John T. Leahy, who is currently employed as a Regional Investment Executive with BAI and was, formerly, employed at Quick and Reilly, Inc., ("Q&R") a predecessor brokerage firm to BAI. (Filing No. 22). Leahy states that McElroy opened a brokerage margin account Q&R, which became the BAI margin account, that is the subject of the Complaint, when the

companies merged. Leahy authenticated and laid the foundation for the Account Opening document that is executed by McElroy and is identified as Exhibit A to Leahy's affidavit. The Account Opening document is executed by McElroy in two places, following paragraph 8 and Paragraph 9.

Paragraph 8 of the Account Opening document states that McElroy acknowledges by signing the document that he has received, read and understood the terms and conditions as described in the Quick & Reilly *Account Agreement and Information Guide*, and that he agrees to abide by those terms and conditions. (Filing No. 22, Ex. A, p. 2). In Paragraph 9 of the Account Opening document, McElroy further acknowledges that he has received, read and understands the "pre-dispute arbitration clause located in the Quick and Reilly *Account Agreement and Information Guide*, pages 8 and 9, paragraph 37, and agree[s] to resolve any disputes arising out of . . .[his] margin account by arbitration." (*Id.*)

Exhibit B to Leahy's affidavit is the Quick & Reilly "Account Agreement and Information Guide" that was revised in March 1991. Leahy states that McElroy's Account Opening document was signed in September 1991, and that Exhibit B is the *Account Agreement and Information Guide* that was in effect at the time that McElroy opened his account, which sets the terms and conditions.

At page 37, the *Account Agreement and Information Guide* states:

37. You acknowledge that you have read and understand the following facts about arbitration procedures:

 - Arbitration is final and binding on the parties.
 - The parties are waiving their right to seek remedies in court, including the right to a jury trial.
 - Pre-arbitration discovery is generally more limited than and different from court proceedings.

4

- The arbitrator's award is not required to include factual findings or legal reasonings [sic] and any party's right to appeal or to seek modifications of rulings by arbitrators is strictly limited.
- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.

> You agree that any controversy between you and Quick & Reilly, Inc. U.S. Clearing Corp., and/or any of its officers, directors, employers, agents or affiliates relating to the margin account agreement, your margin account and the transactions therein, or in any way arising out fo your relationship with Q&R and / or USCC, will be settled by arbitration in accordance with the rules then in effect of the New York Stock Exchange or National Association of Securities Dealers, which must be commenced by a written notice of intention to arbitrate. Judgement [sic] upon an arbitration award may be rendered in any court of competent jurisdiction.

(Filing No. 22, Ex. B at ¶ 37).

When Quick & Reilly merged with BAI, McElroy's Quick & Reilly account became the margin account at issue in this case and a new account number was assigned. Paragraph 25 of the Quick and Reilly *Account Agreement and Information Guide* states in part, that the agreement "shall inure to the benefit of Q&R and/or USCC, and their successors and assigns." (*Id.* ¶ 26).

The Court finds that McElroy executed the arbitration agreement, that he acknowledged that he understood the agreement's meaning, and that the agreement included that Q&R could transfer its rights under the agreement to its successors and assigns. This evidence demonstrates that the parties agreed to arbitrate this matter, and, if the Court did not dismiss for lack of jurisdiction, it would compel arbitration.

For these reasons,

IT IS ORDERED:

1. The Defendant's Motion to Dismiss or in the Alternative to Compel Arbitration (Filing No. 12) is granted;

2. The Complaint is dismissed without prejudice for lack of subject matter jurisdiction;

3. The Plaintiff's Motion to Deny Defendant's Motion to Dismiss or in the Alternative to Compel Arbitration (Filing No. 16) is denied;

4. All other pending motions (Filing No. 18) are denied as moot; and

5. A separate judgment shall be entered.

Dated this 31st day of May, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge